Filed 6/30/21  L.M. v. Superior Court CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| L.M.,<br><br>        Petitioner,<br><br>v.<br><br>SUPERIOR COURT FOR THE COUNTY OF CONTRA COSTA,<br><br>        Respondent,<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, et al.,<br><br>        Real Parties in Interest. | A162577<br><br>(Contra Costa County<br>Super. Ct. No. J2000203) |

In this juvenile dependency proceeding under Welfare and Institutions Code section 300, petitioner L.M. (Father) seeks extraordinary writ relief under rule 8.452 of the California Rules of Court, challenging the juvenile court's order terminating reunification services and setting a section 366.26 hearing.[1]  Father contends the court should have extended reunification

---

[1]     All statutory references are to the Welfare and Institutions Code.

services and not reduced his visitation after those services were terminated. We will deny Father's petition.

## I. FACTS AND PROCEDURAL HISTORY

On February 28, 2020, the Contra Costa County Children & Family Services Bureau (Bureau) filed a dependency petition pursuant to section 300 as to the minor M.D., a newborn. The petition alleged that the minor was at risk in Mother's care because Mother and the minor tested positive at the minor's birth for amphetamines and cannabinoids. The petition also alleged that Mother failed to reunify with two half-siblings of the minor.

The Bureau's detention/jurisdiction report advised that, according to Mother, the minor was Father's son. When contacted by the social worker, Father stated he might be the father and would like to visit the child. Father was living with his own mother, his five-year-old son, and other relatives. His criminal history included a 2019 arrest for a probation violation on a theft-related offense and two convictions for driving under the influence.

At a detention hearing on March 2, 2020, the minor was detained and the Bureau was granted discretion to place him with a suitable adult relative or a non-related extended family member. The court granted Father's request for a paternity test, along with one hour of weekly supervised visitation.

The Bureau's jurisdiction/disposition report recommended reunification services to Father if his status was raised to presumed father, and no reunification services to Mother. The report noted that Father's genetic testing resulted in a 99.99 percent chance that he was the minor's father. The Bureau had offered Mother and Father services early in the case, but Father had not participated because he did not understand why he needed to do so since he was a non-offending parent. Father attended only six of ten

visits with the minor, and the visits he missed had been cancelled due to his failure to confirm them in advance. The Bureau asked Father to drug-test, but he declined.

The jurisdiction/disposition hearing was held remotely on September 21, 2021. Neither Mother nor Father appeared. The court found the allegations of the petition to be true, denied reunification services to Mother, raised Father's status to that of presumed father, and granted Father reunification services. Father was also granted supervised visitation a minimum of four times per month. His case plan included a parenting class and drug tests. If he tested positive for drugs, he would also be required to participate in substance abuse treatment.

The Bureau's report for the six-month review hearing recommended that the court terminate Father's reunification services and set the case for a section 366.26 hearing. Father had been given a referral for random drug testing on February 9, 2021, but the Bureau had not received any results. Father visited the minor only four times out of 13 opportunities, and he did not visit at all between September 16, 2020 and November 16, 2020 because his visits were suspended due to his missing three consecutive visits. The Bureau concluded that the parents loved the minor but were not adequately prepared to raise him. It also noted Father's lack of communication with the Bureau and his lack of participation in reunification services.

Father attended the contested six-month review hearing, which was conducted remotely on April 26, 2021. The social worker reiterated that Father missed a number of visits with the minor, and she reported Father's excuses that he had trouble with his motorcycle or that an Uber was running late. She acknowledged that Father had been attentive to the minor when he did visit.

3

At the continued contested hearing on May 3, 2021, the social worker testified that Father said he recently moved out of the paternal grandmother's home. Father had been given letters for a parenting class and acknowledged he received them, but he had not attended any sessions. Sixteen visits had been cancelled due in part to Father's failure to confirm the visits in advance, and he had attended only seven visits.

The court terminated Father's reunification services and set a section 366.26 hearing for August 16, 2021. The court found that return of the minor to parental custody would create a substantial risk of detriment to the child. The court also found that the extent of Father's progress toward alleviating or mitigating the causes necessitating placement in foster care was "poor." In this regard, the court noted that Father's case plan had been minimal— essentially a parenting class and substance abuse testing—yet despite multiple referrals Father had "not participated in one parenting class" or "any substance abuse testing." Furthermore, his visitation with the minor was "intermittent . . . at best," in that he made just seven visits, he missed 16 visits, and one visit was cancelled. In light of Father's poor participation in visits, and evidence that the minor cried extensively during those visits, the court reduced Father's visitation to a minimum of once a month.

Father's petition followed, along with a request for a stay of the section 366.26 hearing pending a ruling on his petition. We issued an order to show cause, and the Bureau filed an opposition to the petition.

## II. DISCUSSION

Father contends the court should have extended reunification services and should not have reduced his visitation.

A. <u>Reunification Services</u>

When the dependent child, like the minor in this case, is younger than three years old on the date of initial removal, the court may terminate reunification efforts after six months of services. (§ 361.5, subd. (a)(3)(C).) At the six month review hearing, if the juvenile court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a hearing pursuant to section 366.26. (§ 366.21, subd. (e)(3).) The court shall continue the case to the 12-month permanency hearing, however, if the court finds there is a substantial probability that the child may be returned to the parent within six months or that reasonable services were not provided. (§ 366.21, subd. (e)(3).) We review the court's order for substantial evidence. (*Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1028.)

Here, substantial evidence—indeed, overwhelming evidence—supported the court's finding that Father failed to participate regularly and make substantive progress in his treatment plan. Father's plan required that he participate in a parenting class and submit to random drug testing for six months. He was offered or provided services to meet these obligations, including multiple referrals to a parenting class and drug testing. Nonetheless, he did not attend a single parenting class or ever submit to any substance abuse testing. And although he was granted visitation, he visited with the minor only seven out of a potential 24 times, missing some of those visits because he did not even confirm the appointments. Although the court made its ruling at the six month review hearing, that hearing occurred nearly 15 months after the child was detained, and about eight months from disposition (September 2020 to May 2021), yet Father had made no progress during that period.

5

Father notes that, if the juvenile court finds there is a substantial probability that a child under age three may be returned to his parent within six months, the court shall continue the case to the 12-month permanency hearing. (§ 366.21, subd. (e)(3).) He argues that such a substantial probability of return arose here, given his support system, the quality of his visits, and the relatively few reunification requirements in his case plan. The court did not make such a finding, however, and Father does not demonstrate this to be error. Given Father's failure to do anything toward meeting his case plan goal, he fails to establish that the juvenile court was compelled to conclude there was a substantial probability the minor might be returned to him within six months.

B. <u>Visitation</u>

At the six-month review hearing, the court reduced Father's minimum visits from four times per month to one time per month. We review for abuse of discretion. (*In re James R.* (2007) 153 Cal.App.4th 413, 434–435.)

In reducing the number of visits, the court explained: Given that Father completed "less than 50 percent" of visits, and "the testimony related to [the minor's] reaction [of crying] during these visits and the lack of real engagement in the visits that were offered, I would think it would be appropriate to decrease visits given the evidence that I have been presented. And it would be my inclination with this visitation record and the testimony related to [the minor's] reactions, that in this particular case it would be appropriate to go down to once a month visitation." Furthermore, the court noted, there were periods of time where there were no visits at all. "So again, I think on this record going down to once a month visitation is realistic. It's best for [the minor] and it is appropriate." The court advised that this was

6

merely the "minimum," and the Bureau "can provide more if they feel that that is appropriate."

Father argues that "[v]isitation with the child absent a showing of detriment to the child should not be reduced," citing *In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1504. Father's assertion is incorrect. While the court in *In re Hunter S.* did state that visitation should *continue* after reunification services are terminated absent a showing of detriment, it did not state that visitation must necessarily continue at the same frequency. (*Ibid.* See § 366.22, subd. (a)(3) ["The court shall continue to permit the parent or legal guardian to visit the child unless it finds that visitation would be detrimental to the child."].)

Here, the court *did* allow Father to continue to visit the minor after termination of reunification services. It merely reduced the minimum number of visits, consistent with Father's visitation history, the minor's reaction to those visits, and the court's concern for the well-being of the child. (See § 362.1, subd. (a)(1)(A) & (B) [visitation "shall be as frequent as possible, consistent with the well-being of the child," and "[n]o visitation order shall jeopardize the safety of the child"]; *In re Matthew C.* (2017) 9 Cal.App.5th 1090, 1101–1103 [minor's emotional as well as physical well-being considered].) Father fails to establish an abuse of discretion.

### III. DISPOSITION

The petition is denied. Petitioner's request for a stay of the section 366.26 hearing is therefore denied as moot.

_____

NEEDHAM, .J.

We concur.

_____

SIMONS, Acting P.J.

_____

RODRIGUEZ, J. *

*L.M. v. Superior Court* / 162577

---

\* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.